EXHIBIT C

Westlaw.

34 Trials Digest 14th 11            Page 1

34 Trials Digest 14th 11 (Cal.Superior), 2011 WL 3606915
For Opinion See 2011 WL 2260328 (Trial Order)

Copyright (c) 2012 Thomson Reuters/West

Superior Court, Riverside County, California.

O'Connor vs. UHS-Corona Inc.

TOPIC:
Synopsis: Nurse alleges retaliatory termination in violation of CFRA
Case Type: Labor & Employment; Retaliation; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Family & Medical Leave; Defamation; Other; Labor & Employment; Violation of Public Policy

DOCKET NUMBER: RIC516507

STATE: California
COUNTY: Riverside

Verdict/Judgment Date: January 20, 2011

JUDGE: Lillian Y. Lim

ATTORNEYS:
Plaintiff: Jeffrey A. Rager, Rager Law Firm, Torrance; Melanie Rasic Savarese, Savarese Law Firm, Sierra Madre. Defendant: Tracie Childs, Manning & Marder, Kass, Ellrod, Ramirez, San Diego; Al De La Cruz, Manning & Marder, Kass, Ellrod, Ramirez, San Diego.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $1,630,334

Range: $1,000,000-1,999,999

$130,334 past economic loss; $1,000,000 past non-economic loss; $500,000 future non-economic loss against defendants UHS-Corona Inc. dba Corona Regional Medical Center and UHS of Delaware Inc. During a concurrent bench trial, the court ruled that Universal Health Services Inc. was not a single or joint employer of plaintiff, and judgment was issued in favor of Universal Health Services Inc. as against plaintiff.
Trial Type: Jury
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff: Not reported.
Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to court records: On March 25, 2003, plaintiff Doreen O'Connor began her employment with defendants Corona Regional Medical Center, Universal Health Services Inc. ("UHS"), Brenda Schicker, Ruth Battles, and May Walsh as an RN on the nursery staff from 7:00 a.m. to 7:00 p.m.
On July 9, 2003, plaintiff's Performance Review read, "Doreen meets or exceeds all standards of performance. She is very willing to learn and very pleasant with patients and co-workers. It is a pleasure to have Doreen on staff, she has experienced some very busy shifts and is doing an excellent job."
On March 23, 2005, plaintiff was rated overall as "Exceeds Requirements." The review stated, "Doreen has been very helpful in some of the changes that have taken place in our department. She developed two of the tests that were used for competencies in our mother-baby department. Doreen is a very knowledgeable and skilled nurse here at Corona and we are lucky to have her here as part of our staff."
In April 2006, plaintiff was promoted to Charge Nurse. In October 2007, defendant Brenda Schicker was hired as Education Manager.
In February and March 2008, plaintiff was on a protected medical leave for diabetes and asthma. Upon return from her medical leave, she was presented with a performance review in May 2008. She received a lower rating and was told not to be "emotional" when presenting concerns to her director. Plaintiff was informed that she was "not giving as much as before because of her medical condition."
On October 8, 2008, plaintiff was informed she was fired by defendants Schicker, Battles, and Walsh. In the presence of others, plaintiff was accused of "harassing, stocking [sic], and spying, on the nursing staff." She was accused of "inappropriate behavior and inappropriate language." She was told that the staff felt "threatened" by her.
Plaintiff filed suit for Retaliation in Violation of the California Family Rights Act, Wrongful Termination in Violation of Public Policy, Retaliatory Termination in Violation of Public Policy, and Defamation Per Se.

CLAIMED INJURIES
According to court records:
Emotional distress; major depressive disorder.

CLAIMED DAMAGES
According to court records:
$125,723 loss of earnings.

SETTLEMENT DISCUSSIONS
According to court records:
Not reported.

COMMENTS
According to court records:
The complaint was filed on December 30, 2008.

Trials Digest, A Thomson Reuters/West business

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Riverside County Superior Court/Central

34 Trials Digest 14th 11 (Cal.Superior), 2011 WL 3606915

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

2010 WL 4307350 Page 1

2010 WL 4307350 (Cal.Superior)
For Dockets See BC398582

Copyright (c) 2012 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California.

Yvette Guerrero v. Bernadette Sperry, Verdugo Mesa Corporation and Does 1 to 10

No. BC398582

DATE OF VERDICT/SETTLEMENT: May 12, 2010

TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - INTENTIONAL TORTS - TRESPASS - PRIVACY - INVASION OF PRIVACY - INTENTIONAL TORTS - DEFAMATION - EMPLOYMENT - EMPLOYMENT AGREEMENT
Plaintiff Claimed Her Termination Violated Employment Contract

SUMMARY:
RESULT: Verdict-Plaintiff
Award Total: $170,509
The jury found for Guerrero on the breach of employment contract and defamation claims and awarded her $170,509.

EXPERT WITNESSES:
Plaintiff: Chell Chelliah, CPA; Accounting (Forensic); Manhattan Beach, CA
Defendant: Laura Fuchs Dolan, M.B.A.; Economics; Costa Mesa, CA

ATTORNEYS:
Plaintiff: Patricio T.D. Barrera; Patricio T.D. Barrera, Attorney-At-Law; Los Angeles, CA (Yvette Guerrero, Yvette Guerrero)
Defendant: Marc S. Shapiro; Hanger, Steinberg, Shapiro & Ash; Woodland Hills, CA (Bernadette Sperry, Verdugo Mesa Corporation)

JUDGE: Rex Heeseman

RANGE AMOUNT: $100,000-199,999

STATE: California
COUNTY: Los Angeles

INJURIES: Guerrero was seeking damages for unpaid back pay and front pay.

Facts:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2010 WL 4307350 Page 2

On Aug. 8, 2007, plaintiff Yvette Guerrero, a licensed real estate broker and property manager, was terminated by her sister Bernadette Sperry from a family-owned real estate investment business, Verdugo Mesa Corporation. She had worked for the company for more than 20 years under a written agreement. Sperry was the president of Verdugo Mesa.

Guerrero sued Sperry and Verdugo Mesa, alleging breach of employment contract, trespass, invasion of privacy, wrongful termination and defamation.

Plaintiff's counsel argued that there was no cause to support Guerrero's termination and that Sperry terminated her without board approval in violation of the company's by-laws and in breach of the employment agreement.

Plaintiff's counsel argued that Sperry had entered into Guerrero's apartment and office without consent to remove financial documents and evidence that could have been relative to the lawsuit. Counsel also contended that Sperry defamed Guerrero by telling family members and others that Guerrero had engaged in financial irregularities.

Defense counsel argued that Guerrero's employment contract was not enforceable. Counsel denied that Sperry trespassed, invaded Guerrero's privacy or defamed Guerrero. Counsel argued that Sperry was unaware of the agreement at the time of Guerrero's termination and that Guerrero did not provide the agreement until after the lawsuit had been filed.

ALM Properties, Inc.

Superior Court of Los Angeles County, Central

PUBLISHED IN: VerdictSearch California Reporter Vol. 9, Issue 42

2010 WL 4307350 (Cal.Superior)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

2008 WL 5455863 Page 1

2008 WL 5455863 (Cal.Superior)
For Opinion See 2009 WL 247625 (Trial Order)

Copyright (c) 2012 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California.

Michael Martinucci, M.D. v. Southern California Permanente Medical Group and Kaiser Foundation Health Plan Inc.

No. BC 365398

DATE OF VERDICT/SETTLEMENT: December 11, 2008

TOPIC: EMPLOYMENT - RETALIATION - EMPLOYMENT - WRONGFUL TERMINATION
Doctor Said He Was Fired After Complaining About Department

SUMMARY:
RESULT: Verdict-Plaintiff
The jury rendered a plaintiff verdict, finding SCPMG and KFHP liable for wrongful discharge and for defama- tion. The jury found that KFHP retaliated against Martinucci for his patient advocacy, that he was defamed by the allegations of sexual harassment and racist comments, and that he was retaliated against for being a patient advoc- ate.

EXPERT WITNESSES:
Plaintiff: Anthony E. Reading, Ph.D.; Psychology/Counseling; Beverly Hills, CA Barry D. Pressman, M.D.; Radiology; Los Angeles, CA Ted Vavoulis, M.S; Economics; Los Angeles, CA

ATTORNEYS:
Plaintiff: Charles T. Mathews; Charles T. Mathews & Associates; San Marino, CA (Michael Martinucci, M.D.); Jeffrey A. Rager; Rager Law Office; Torrance, CA (Michael Martinucci, M.D.)
Defendant: Kenneth R. Pedroza; Cole Pedroza, LLP; Pasadena, CA (KFHP, SCPMG); Charles M. Dyke; Nixon Peabody LLP; San Francisco, CA (KFHP, SCPMG)

JUDGE: Mary Thornton House

RANGE AMOUNT: $5,000,000-999,999,999

STATE: California
COUNTY: Los Angeles

INJURIES: Martinucci alleged emotional distress.

Facts:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

From April 2003 to February 2006, plaintiff Michael Martinucci, a physician, worked for the Southern California Permanente Medical Group (SCPMG) in the radiology department at Kaiser Permanente's Los Angeles Medical Center (Kaiser Sunset).

In October 2005, the human resources departments for SCPMG and Kaiser Foundation Health Plan, Inc. (KFHP) received a report that Martinucci had inappropriately touched a male radiology technologist.

During the course of investigating that allegation, additional allegations were made against Martinucci, asserting that he had made inappropriate racial comments, which also were investigated. Martinucci denied that he had inappropriately touched a technologist or that he had made inappropriate racial comments, but SCPMG concluded that the allegations had merit and required plaintiff to resign or be terminated.

Martinucci sued SCPMG and KFHP, claiming that he was a victim of retaliation for having allegedly "advocate[d] for medically appropriate health care for his . . . patients," within the meaning of California Business & Professions Code § 2056.

Martinucci claimed he was "defamed and fired because he advocated better care for his patients."

Martinucci alleged that his advocacy for medically appropriate health care consisted of his development and implementation of new protocols for various radiological procedures, which he alleged were resisted by some of the radiology technologists. Martinucci alleged that his complaints of technologist non-compliance were met with resistance by the department chief, and that this occurred prior to the time any allegations of inappropriate touching or racial comments were made against him. According to Martinucci, he was "rebuked" by the department chief for requiring the technologists to strictly adhere to his protocols. (According to the defendants, the plaintiff merely was counseled that his approach to addressing perceived shortfalls in staff performance was causing him to "alienate" the technologists.)

Martinucci further sued for defamation, claiming that he was defamed when the allegations of inappropriate touching and racial comments were repeated internally within SCPMG and KFHP in a written human resources report documenting the internal investigation and in oral discussions among the radiology department chief and the medical director at Kaiser Sunset.

He sought $485,444 in lost earnings and $636,115 in future lost earnings. His demands for past and future emotional distress and punitive damages were not specified.

The jury also found that the allegations brought against Martinucci for sexual harassment of a male technologist and racial discrimination which were used to falsely justify his termination were false and maliciously brought.

The jury awarded $11,441,559.

ALM Properties, Inc.

Superior Court of Los Angeles County

PUBLISHED IN: VerdictSearch California Reporter Vol. 8, Issue 4

2008 WL 5455863 (Cal.Superior)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2008 WL 5455863 Page 3

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

2005 WL 2398088 Page 1

2005 WL 2398088 (Cal.Superior)
For Opinion See 2008 WL 5271138 (Trial Order), 2005 WL 6231161 (Trial Order), 2005 WL 6231160 (Trial Order), 2005 WL 6231162 (Trial Order), 2004 WL 5654910 (Trial Order), 2004 WL 5654911 (Trial Order)

Copyright (c) 2012 ALM Media Properties, LLC. All Rights Reserved

Superior Court, Los Angeles County, California

MICHAEL GNESDA V. UNITED PARCEL SERVICE, INC., UPS GENERAL SERVICES INC., AND STANLEY JONES

No. VC039590

DATE OF VERDICT/SETTLEMENT: August 18, 2005

TOPIC: EMPLOYMENT - WRONGFUL TERMINATION - EMPLOYMENT - RETALIATION - EMPLOYMENT - WHISTLEBLOWER - INTENTIONAL TORTS - DEFAMATION UPS EMPLOYEE FIRED FOR EXPOSING OVERBILLING

SUMMARY:
AWARD: $20,748,600
RESULT: Verdict-Plaintiff
The jury found for Gnesda on the wrongful termination and retaliation claims, but for the defendants on the defamation claim. It awarded $748,600 in compensatory damages and $20 million in punitives.

EXPERT WITNESSES:
Plaintiff: Catherine M. Graves, M.B.A., C.F.A.; Economics; Fullerton, CA

ATTORNEYS:
Plaintiff: Thomas Bienert; Bienert and Krongold; San Clemente, CA David Wiechert; Law Offices of David Wiechert; San Clemente, CA
Defendant: William D. Claster; Gibson, Dunn and Crutcher; Irvine, CA T. Kevin Roosevelt; Gibson, Dunn and Crutcher; Irvine, CA

JUDGE: Chris R. Conway

RANGE AMOUNT: $5,000,000-999,999,999

STATE: California
COUNTY: Los Angeles County

INJURIES: Gnesda claimed past lost earnings and future lost earning capacity, asserting that he had to tell subsequent potential employers that he had been terminated, which had a negative impact on his efforts to find work. By the time of trial Gensda was working in a job similar to the last one he held at UPS but was earning less He did not request a specific amount in past or future lost earnings.

FACTS:

In March 2002, plaintiff Michael Gnesda, 44, an operations supervisor for United Parcel Service, was fired. An employee for over 16 years in various capacities and locations, in June 2000, Gnesda, who was then a salesman in the company's business development group handling major accounts, raised concerns voiced by two of his corporate customers that UPS was overcharging them.

UPS applies a $50 surcharge to packages it classifies as 'oversized' or 'irregular.' It also publishes a 'tariff,' i.e., a chart instructing customers on how to measure and weigh a UPS package and how to charge themselves, the normal practice for corporate customers. The tariff contains descriptions of oversized and irregular packages, as does a pricing manual that UPS puts out. Gnesda received complaints from some of his long-time customers that UPS was mischaracterizing packages as oversized and then back-charging them the $50. Within a matter of weeks after raising those concerns, Gnesda was transferred out of business development and into the supervisory position in operations. He was assigned to the graveyard shift in a warehouse and his duties included shifting packages and performing other manual labor.

Then, in around March 2001, Stanley Jones, a former manager from business development, was transferred to operations, where he held a position above Gnesda in the chain of command. Gnesda claimed that, sometime subsequently, he asked Jones if the company had done anything about its billing practices.

In March 2002, Gnesda was terminated. The reason given was that he had altered a subordinate's time card.

Claiming that the reason was pretextual, Gnesda sued UPS and Jones for wrongful termination, retaliation and defamation on the theory of forced publication (arguing that he had to tell subsequent potential employers that he had been terminated, which had a negative impact on his efforts to find work). He claimed that the company retaliated against him for challenging its fraudulent billing practices first by transferring and then by firing him.

Plaintiff counsel pointed to UPS records stating that he 'refused to sell around the issue' and that Gnesda was always fighting UPS and 'standing up for the customer.'

Defense counsel argued that Gnesda was transferred because he was not performing up to par in business development and because a number of customers had sent letters complaining about him.

Gnesda countered that he had received 'golden eagle,' 'silver eagle' and 'bronze eagle' awards from the company in 1997, 1998 and 1999.

On the allegedly bogus reason given for the termination, plaintiff counsel argued that Gnesda believed the driver had made a mistake on his time card and called him at home. The driver confirmed the error and requested that Gnesda make the correction.

The defense argued that Gnesda was fired for one reason: falsifying corporate records. The defense claimed that after signing a form acknowledging that such a practice was prohibited and being told that other supervisors had been terminated for same, he made a critical change of one of his driver's time cards from four hours, which is classified as a full day for the company's record-keeping purposes, to three hours and 59 minutes, which is classified as a half day. UPS claimed that Gnesda made the change so that he would have more favorable statistics as a supervisor. (Shifts of four hours or longer for drivers were frowned upon at the company; there would be no difference in the employee's pay for the day in question.)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

As for the argument that falsifying records reason was pretextual and that his firing was really retaliatory, the defense contended that the two supervisors involved in the termination decision were not even aware of Gnesda's earlier complaints about the company's billing practices.

Gnesda also claimed general damages for his pain and suffering, and punitive damages.

ALM Properties, Inc.

Superior Court of California, Los Angeles County, at Norwalk

PUBLISHED IN: VerdictSearch weekly

2005 WL 2398088 (Cal.Superior)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

48 Trials Digest 9th 13

48 Trials Digest 9th 13 (Cal.Superior), 2004 WL 5066208
For Dockets See BC278495

Copyright (c) 2012 Thomson Reuters/West

Superior Court, Los Angeles County, California.

Perez vs. Lake Avenue Congregational Church of Pasadena

TOPIC:
Synopsis: Schoolteacher alleges retaliatory termination for whistleblowing
Case Type: Labor & Employment; Whistleblower; Labor & Employment; Termination/Constructive Discharge; Labor & Employment; Violation of Public Policy; Defamation; Slander; Contracts; Breach; Labor & Employment; Breach of Contract

DOCKET NUMBER: BC278495

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: February 5, 2004

JUDGE: Soussan G. Bruguera

ATTORNEYS:
Plaintiff: Donald Conway, Shegerian & Associates Inc., Beverly Hills.; N. Nick Ebrahimian, Shegerian & Associates Inc., Beverly Hills.; Alfred Hakim, Law Offices of Alfred Hakim, Los Angeles.; Carney R. Shegerian, Shegerian & Associates Inc., Beverly Hills.
Defendant: Steven R. Bangerter, Cooksey, Toolen, Gage, Duffy & Woog, Costa Mesa.; Todd A. James, Cooksey, Toolen, Gage, Duffy & Woog, Costa Mesa.

SUMMARY:
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $970,001

Range: $500,000-$999,999

Wrongful termination: $120,000 economic; $350,000 non-economic. Defamation: $1 past economic; $125,000 future economic; $250,000 past non-economic; $125,000 future non-economic.
Trial Type: Jury
Trial Length: Not reported.
Deliberations: Not reported.
Jury Poll: Not reported.

EXPERTS:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

48 Trials Digest 9th 13                                                                                                    Page 2

Plaintiff: Not reported.
Defendant: Not reported.

TEXT:
CASE INFORMATION
FACTS/CONTENTIONS

According to Defendant: Plaintiff Deborah Perez worked for defendants Lake Avenue Congregational Church of Pasadena dba Lake Avenue Church School and Kohar Jarlekian as a teacher of minor children for four years. She alleged that defendants unlawfully terminated her employment in response to her making complaints to both defendants and the state government about the illegally high number of students being enrolled in her classroom by defendants. Plaintiff alleged that the teacher-to-student ratio was too high as a result of defendants' financial motivations. Plaintiff further alleged that her complaints about safety problems at defendants' facility were another illegal motivating factor in the termination of her employment. Plaintiff further alleged that defendants defamed her by speaking falsely and negatively about her work performance and skills and breached their implied and express employment contract with her.
Defendants denied all of plaintiff's allegations. Defendants denied that any actions on their part were taken illegally and alleged that plaintiff was fired from her job because of poor work performance.

CLAIMED INJURIES
According to Defendant: Emotional distress.

CLAIMED DAMAGES
According to Defendant: Not reported.

SETTLEMENT DISCUSSIONS
According to Defendant: Not reported.

Trials Digest, A Thomson/West business

Los Angeles County Superior Court/Downtown

48 Trials Digest 9th 13 (Cal.Superior), 2004 WL 5066208

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.